**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

TERRANCE BRANTLEY and
MARCELLAS KING,

        Plaintiffs,

v.                                      Case No.: 6:23-cv-536-WWB-LHP

UNITED STATES OF AMERICA,

        Defendant.

_____/

## <u>ORDER</u>

THIS CAUSE is before the Court following a three-day bench trial on Plaintiffs Terrance Brantley and Marcellas King's negligence claims against Defendant, United States of America

### I.    LEGAL STANDARD

"In an action tried on the facts without a jury[,] . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1). "The burden of proof in civil cases is the same regardless of whether the finder of fact is a judge in a bench trial or a jury." *Men of Destiny Ministries, Inc. v. Osceola Cnty.*, No. 6:06-cv-624-Orl, 2006 WL 3219321, at *3 (M.D. Fla. Nov. 6, 2006). Plaintiff bears the burden of establishing each element of its claim by a preponderance of the evidence. *Id*. "A 'preponderance of the evidence' . . . means an amount of evidence that is enough to persuade [the trier of fact] that the Plaintiff's claim is more likely true than not true." Pattern Jury Instructions (Civil Cases) of the Eleventh

Circuit, Basic Instruction No. 3.7.1.  "Because the court acts as both the judge and the jury, it may resolve conflicts in the evidence, as well as make credibility assessments." *Men of Destiny Ministries*, 2006 WL 3219321, at *3.

## II.    FINDINGS OF FACT

This case involves a September 3, 2021, low speed, rear end automobile collision between Plaintiffs and Breilly Aracena, a United States Postal Service ("**USPS**") employee, in Orlando, Florida.  (Doc. 54 at 174:1–23; Doc. 55 at 240:22–242:2, 306:11–15).  At the time of the collision, Plaintiffs were riding in a Dodge Ram 2500 with Brantley driving and King seated in the front passenger seat.  (Doc. 54 at 174:6–10, 202:10–14; Doc. 55 at 240:25–241:3).  While Plaintiffs were stopped in traffic, Aracena drove his USPS vehicle into the back of the truck.[1]  (Doc. 55 at 407:6–11).  According to the testimony of Dr. Ying Lu, a biomechanical engineer and accident reconstructionist, the USPS vehicle collided with the truck at a speed no greater than 6.6 miles per hour.  (*Id.* at 419:12–14, 425:19–22, 447:2, 448:8–12).  Based on Dr. Lu's testimony, the collision would have caused Plaintiffs to experience somewhere between 2.2 to 2.7 "g-forces," (*id.* at 448:8–12), which is the type of force a person would experience doing normal, day-to-day activities.  (*Id.* at 450:17–21).[2]  And while the impact may cause a person of Plaintiffs' same height and general weight to experience "muscle strain" due to the force of impact,

---

[1] Aracena testified that he rear-ended the Dodge Ram because he underestimated the distance between the two vehicles when he was attempting to break and was solely at fault for the accident.  (Doc. 55 at 407:6–11, 412:14–20).

[2] Dr. Lu testified that human beings "experience transient dynamic forces in a lot of activities."  (Doc. 55 at 449:24–25).  A person who is stationary is basically at 1 g-force, while a person doing a "strenuous" activity like jumping jacks could experience 5 g-forces.  (*Id.* at 450:1–7).

(*id.* at 477:25–478:2), the motion of the spine would not have exceeded the spine's normal range of motion.  (*Id.* at 461:8–21).

After the accident, Plaintiffs and Aracena got out to observe the damage to their respective vehicles.  (Doc. 54 at 177:20–178:2; Doc. 55 at 247:23–248:5).  The Dodge Ram had a minor dent near the rear license plate and the USPS vehicle's front left headlight was broken.  (Doc. 52-13 at 3–9).  Plaintiffs called emergency services and waited multiple hours for police to arrive.  (Doc. 54 at 176:16–177:8; Doc. 55 at 307:17–20, 308:23–309:1).  When no officer responded, Plaintiffs drove home.  (Doc. 54 at 178:18–179:7; Doc. 55 at 253:20–254:5).

The next day, Plaintiffs visited the Altamonte Advent Health Emergency Room to obtain medical treatment for pain related to the accident.  (Doc. 54 at 181:19–25; Doc. 55 at 255:2–24).  Brantley complained of generalized body pain along with tingling in his right foot and received X-ray imaging of his spine, foot, and ribs.  (Doc. 55 at 255:22–256:10, 260:25–261:3).  The X-rays showed no acute cervical vertebral[3] or rib fractures but did reveal evidence of a prior gunshot wound around the left lower rib.  (Doc. 52-1 at 60–62).  After being discharged from this initial hospital visit, Brantley was diagnosed with minor body aches and prescribed pain medication.  (Doc. 52-1 at 20–22, 27).[4]  On September

---

[3] Dr. Jayson Lord, Plaintiffs' radiologist, testified that "degenerative" or "chronic" disc injuries are those that occur over long periods of time, while "traumatic" or "acute" disc injuries are those that occur when an "imparting force" abruptly or quickly inflicts damage upon the relevant spinal area.  (Doc. 54 at 25:6–16, 33:3–34:21).  He also testified that those categories are not mutually exclusive.  (*Id.* at 34:22–36:12 (describing how the darkness of a herniated disc in imaging reflects the desiccation healing process in the body)).

[4] Thereafter, on September 15, 2021, Brantley visited his primary care physician at Sanitas Medical Center, reported the accident, and complained of generalized body aches and pain in his right foot.  (Doc. 55 at 259:17–261:3).

21, 2021, a little over two-and-half weeks after his initial visit to Altamonte, Brantley visited Kirkman Chiropractic after being referred by his law firm.  (Doc. 52-6 at 7; Doc. 55 at 261:4–262:2).  There, Brantley complained of pain and discomfort in his neck, back, and foot, which he said he experienced constantly.  (Doc. 55 at 261:20–262:2).  At his initial appointment, Brantley was comprehensively examined by Dr. Taylor L. Jacobs, given electrical stimulation to his lumbar and cervical spine, and given ice packs.  (Doc. 52-6 at 19–20).  Including the initial visit, Brantley went to a total of twenty-nine chiropractic appointments.  (*See generally* Doc. 52-6).

On November 9, 2021, and December 27, 2021, MRIs were taken of Brantley's cervical and lumbar spine.[5]  (Doc. 52-12 at 12–17).  According to Dr. Lord, the reviewing radiologist, Brantley's cervical MRI showed that he had a cervical "disc bulge at C4-5, C5-6, and C6-7" and "disc herniation protrusion type" in "C2-3, C3-4, and C7-T1."  (*Id.* at 16).  With respect to his lumbar spine, Brantley was shown to have "disc degeneration" in his L3-4 disc and "left foramen stenosis marked in severity secondary to disc bulge and disc herniation with osteophyte" in L2-3.  (*Id.* at 13).  Dr. Robert Vogelzang, a diagnostic and interventional radiologist called by Defendant, testified that Brantley's bulging discs were "characteristic of chronic disease and no acute findings."  (Doc. 55 at 359:14–361:3).

After the MRIs, Brantley began treatment at Florida Spine & Orthopedic in Winter Park, Florida under the supervision of Doctors, Jason Highsmith and Avery L. Buchholz.

---

[5] Dr. Lord testified that the method of radiological imaging is important to assessing the details of anatomy.  (Doc. 54 at 26:18–28:2).  He stated that MRI technology uses magnetism to produce the greatest level of soft tissue detail, CT scans use radiation to analyze bone fractures with detail along with some soft tissues, and X-Rays use radiation to see bone structures with the least amount of detail.  (*Id.* at 37:9–38:1).

(Doc. 52-3 at 4–8).  Dr. Buchholz assessed Brantley as having "[c]ervical disc disruption at C2-3 through C7-T1"; "[a]xial neck pain"; and "[m]echanical low back pain."  (*Id.* at 12).  On April 22, 2022, given his continued complaints of pain, Brantley elected to undergo neck surgery—a C4-5 arthroplasty—which Dr. Buchholz performed on July 16, 2022.  (*Id.* at 14; Doc. 52-7 at 25–26).  Brantley testified that he had greater mobility in his neck after the surgery but continued treatment because of ongoing neck pain.  (Doc. 55 at 270:14–271:6).  Brantley continued to report "severe pain" after this initial surgery and eventually went on to receive two other surgical procedures by Dr. Buchholz on January 11, 2024, one to treat his cervical spine and another to treat his lumbar spine.  (Doc. 52-3 at 38; Doc. 52-11 at 9–11).  Brantley has not received any medical treatment as relevant to this case since 2024.  (Doc. 55 at 274:21–25).

Before this accident, Brantley suffered severe injuries in both car accidents and incidents of gun violence.  In 2000, Brantley was shot twice in the stomach, an injury requiring emergency surgery to remove his spleen.  (Doc. 55 at 299:20–300:7).  In 2002, Brantley was shot four times in the back by a police officer, subsequently crashed his car, and, again, required hospitalization.  (*Id.* at 298:23–299:19).  Brantley also testified to crashing his car into a pole and breaking his ankle in 2006.  (*Id.* at 293:22–294:21).  And on cross-examination, Brantley admitted to always having back pain, even before the accident in this case, but stated that it had not previously prevented him from working.  (Doc. 55 at 317:13–318:2).

As with Brantley, King visited Altamonte Advent Health the day after the accident with complaints about neck and lower back pain.  (Doc. 54 at 181:19–25).  There, he received two CT scans without contrast of both his cervical and lumbar spine.  (Doc. 51-

1 at 70–72).  His cervical scan showed no "gross acute cervical vertebral body fracture" but did reveal "degenerative changes" at C6–7.  (*Id.* at 70).  His lumbar scan revealed "[n]o gross acute fracture," but did show disc "[b]ulging" at L2-3.  (*Id.* at 71–72).  Dr. Vogelzang agreed that King's scans showed no acute injuries and described King's lumbar disc bulging as a "chronic disease" that appears over time.  (Doc. 55 at 373:8–375:21).  Dr. Vogelzang also testified that King had "congenital narrowing" that forces some people, such as athletes, to discontinue their physical activities due to the increased risk of injury.  (*Id.* at 375:1–15).

Following his hospital visit, King, too, was referred to Kirkman Chiropractic by his lawyer.  (Doc. 51-3 at 9).  There, he complained of occasional, medium-level lower back and neck pain, which becomes aggravated by work, but indicated that he had experienced those symptoms before the accident in this case.  (*Id.* at 11, 15–17).  King made numerous visits to Kirkman Chiropractic for conservative treatment from September 2021, to October 24, 2023.  (*See* Doc. 51-3 at 20–120).

On November 5, 2021, King had an MRI performed of his lumbar spine that revealed disc bulging but no acute injuries.  (Doc. 51-6 at 2–4).  Again, Dr. Vogelzang testified that those spinal features were "chronic in nature with nothing acute seen."  (Doc. 55 at 377:4–13).  After the MRI, King was seen by Drs. Renato Vesga, Highsmith, and Buchholz at Florida Spine and Orthopedics for a series of appointments beginning on November 11, 2021.  (Doc. 51-2 at 3–17).  As of December 28, 2021, King reported more severe pain, and Dr. Buchholz assessed him as having "[l]umbar disc disruption at L2-3 through L5-S1, most notable at L4-5" and "[a]xial low back pain."  (*Id.* at 6–7).

After months of unsuccessful attempts to obtain pain relief through more conservative physical therapeutic treatments. Dr. Buchholz concluded that King was "a good candidate for surgical intervention" of his lumbar spine.  (Doc. 51-5 at 5–7).  King underwent lumbar spinal surgery on January 11, 2024.  (*Id.*).  King testified that the surgery provided "[s]ome relief but not all" and that he still experiences pain and discomfort in his lower back.  (Doc. 54 at 188:16–23).

## III.    CONCLUSIONS OF LAW

The Complaint asserts one claim of negligence on behalf of each Plaintiff pursuant to the Federal Torts Claim Act ("**FTCA**").  (*See generally* Doc. 1-1).  Claims brought pursuant to the FTCA are governed by "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.").  "To establish negligence under Florida law, a plaintiff must prove four elements: (1) a duty of care owed by the defendant to the plaintiff, (2) the defendant's breach of that duty, (3) causation, and (4) damages suffered by the plaintiff."  *Eason v. United States*, 771 F. Supp. 3d 1263, 1282 (M.D. Fla. 2025).  "The plaintiff bears the burden of establishing all four elements by a preponderance of the evidence."  *Id.*

### a.  Duty and Breach

Under Florida law, "[a]ny person operating a vehicle upon the streets or highways within the state" must "drive the same in a careful and prudent manner . . . so as not to endanger the life, limb, or property of any person."  Fla. Stat. § 316.1925(1).  In this case, Aracena testified that he was at fault for the accident, and the parties do not dispute that

Aracena breached a duty owed to Plaintiffs during the scope of his employment with USPS. *See Mercury Motors Express, Inc. v. Smith*, 393 So. 2d 545, 549 (Fla. 1981) ("An employer is vicariously liable for compensatory damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault.") As such, the Court finds that Plaintiffs have carried their burden with respect to the first two elements of negligence.

### b. Causation

To prove causation, the plaintiff must provide evidence showing that "it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." *Rementer v. United States*, No. 8:14-cv-642-T, 2015 WL 5934522, at *2 (M.D. Fla. Oct. 9, 2015) (quotation omitted). "A mere possibility of such causation is not enough." *Id.* (quotation omitted). A plaintiff with "non-readily observable injuries require[s] expert medical evidence to prove causation." *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1338 (11th Cir. 2023); *see also Vero Beach Care Ctr. v. Ricks*, 476 So. 2d 262, 264 n.1 (Fla. 1st DCA 1985) ("Soft-tissue injuries, such as lower back difficulties, are not readily observable, and hence are not susceptible to evaluation by lay persons."). Here, Plaintiffs both claim that they sustained internal injuries to their necks and lower backs. As a result, Plaintiffs were required to present expert medical evidence to prove causation by a preponderance of the evidence.

### 1. Terrance Brantley

The only expert testimony provided by Plaintiffs with respect to causation was that of Dr. Buchholz. Dr. Buchholz testified that he believes this accident caused both Plaintiffs' injuries based on his evaluation of Plaintiffs' post-accident radiological imaging,

his own physical assessment of Plaintiffs, and their self-reported symptoms and timing of those symptoms.  (Doc. 54 at 157:14–158:3).[6]  The Court does not find Dr. Buchholz's testimony sufficiently persuasive to show that this accident caused Brantley's injuries for several reasons.

First, though Brantley's radiological scans show past injuries, the Court does not find that those scans support Dr. Buchholz's causation opinion.  The X-Ray and MRI scans of Brantley do not show acute injuries, but did show prolonged consequences from gunshot wounds.  (Doc. 52-1 at 60–63; Doc. 52-12 at 12–17).  In fact, Dr. Vogelzang testified that Brantley's bulging discs were characteristic of chronic disease.  Though Dr. Lord explained that the chronic nature of an injury may not be mutually exclusive from an acute injury, which includes a sudden injury exacerbating a previously existing chronic condition, Dr. Buchholz did not offer any testimony to explain how this was the case with Brantley.

Second, Dr. Buchholz could not confidently support his opinion through his testimony.  "When the credibility of the plaintiff and his or her witnesses is questioned, the court may properly find that the plaintiff has not sustained the burden of proof required by law." *Foster v. United States*, 858 F. Supp. 1157, 1164 (M.D. Fla. 1994).  As noted during trial, a great deal of Dr. Buchholz's testimony was no different than what was simply noted in the records submitted into evidence.  (Doc. 54 at 149:21–150:9).  In arriving at his opinion, Dr. Buchholz testified that he did not review any of Brantley's medical history

---

[6] Dr. Abhineet Chowdhary, a neurosurgeon presented by Defendant, also testified as to causation and concluded that this accident caused both Plaintiffs minor sprains and strains that should have healed within weeks.  (Doc. 56 at 496:21–25, 520:18–521:22).  As explained in greater detail below, the Court finds that this conclusion adequately supports King's claim but fails to lend adequate support for a finding in Brantley's favor.

outside of the records from Florida Spine and Orthopedics.  (*Id.* at 161:9–19).  Though during Brantley's initial consultation, Dr. Highsmith documented Plaintiff as having a previous "gunshot wound[s] to the face, stomach and lower back," (Doc. 52-3 at 5), Dr. Buchholz could not recall if he knew whether Brantley was shot in the back when rendering his causation opinion. (Doc. 54 at 161:24–162:1).[7]  Notably, Dr. Buchholz could not independently recall if he ever rendered *any* causation opinions even while producing his own records at Florida Spine and Orthopedic.  (Doc. 54 at 160:12–15, 161:5–8).  Dr. Buchholz's critical lapse in memory as to this point is particularly relevant given his testimony that the cause of Brantley's injuries played no role in his decision to provide surgical treatment to Brantley, which was his central role in this case.  (*Id.* at 165:7–166:10).  Even the physical examinations performed on Brantley were done only to identify the source of his anatomical pain and symptoms so that they could be conservatively or surgically treated; it was not used as a method to identify the extrinsic cause of those injuries producing the pain.  (*Id.* at 135:13–139:20).

That leaves what are really the only two bases for Dr. Buchholz's causation opinion: Brantley's self-reported symptoms and the temporal proximity between the accident and the onset of those symptoms.  But expert opinions that appear to rely on the "temporal relationship between the subject accident and the onset of the injuries and fail[] to systematically rule out other potential causes" are "routinely rejected as unreliable by courts in this Circuit." *Derochers v. Amica Mut. Ins. Co.*, No. 6:15-cv-2151-Orl, 2017 WL

---

[7] Although the record reflects that Dr. Buchholz was asked if he was aware that King had previously been shot in the back, there was no evidence of testimony regarding any prior gunshot wounds with respect to King and it appears that Dr. Buchholz understood that the question was actually addressing Brantley's prior gunshot wounds.

8948381, at *6 (M.D. Fla. Oct. 17, 2017); *see also Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1254 (11th Cir. 2010) ("[U]sing temporal proximity to establish causation 'is not an exercise in scientific logic but in the fallacy of post-hoc propter-hoc reasoning, which is as unacceptable in science as in law.'" (quoting *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999))).  Nor can expert testimony be based off temporal proximity and subjective complaints of pain, or anecdotal evidence alone.  *Jazairi v. Royal Oaks Apartment Assocs.*, 217 F. App'x 895, 898 (11th Cir. 2007).  Notably, Brantley admitted in his testimony that he has always had back-pain, and the Court easily sees how the source of that pain could have stemmed from one of the many gunshot wounds or car accidents he has suffered throughout his life.  But Dr. Buchholz failed to explain how any of Brantley's prior accidents or gunshot wounds did not cause his back pain nor did he provide an explanation for how Brantley's history of back pain affected his causation opinion.  On those remaining bases, the Court concludes that his causation opinion is unreliable and falls squarely into the category of opinions that courts routinely reject as unreliable.  *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1195 (11th Cir. 2010) (holding that causation experts must consider other possible causes of symptoms and "eliminate all causes but one").

Furthermore, although Dr. Lu did not specifically testify as to causation, the Court found her exhaustive analysis credible and persuasive.  Specifically, the Court finds it highly improbable that such a minor, low-speed collision would cause the type of severe injury alleged by Brantley.  When paired with the lack of credible expert testimony regarding medical causation and Brantley's history of back pain and injuries, the Court cannot conclude that it is more likely than not that the accident in this case resulted in the

injuries alleged by Brantley.   Therefore, the Court finds that Brantley has failed to prove the element of causation and therefore, his claim fails.

### 2. Marcellas King

The causation analysis, however, differs with respect to King.   Although the Court does not credit Dr. Buchholz's testimony regarding causation for the reasons set forth above with respect to Brantley, the Court finds that Dr. Chowdhary's testimony is sufficient to support's King's claim that this accident caused him injuries.   As an initial matter, unlike Brantley, there is no record evidence or testimony that King previously suffered from car accidents or other injuries or events that would have resulted in or caused the alleged pain.   Additionally, on cross-examination Dr. Chowdhary stated that he had no evidence to suggest King's pain complaints existed before this crash, which is sufficient to satisfy King's burden of persuasion as to causation.[8]  (Doc. 56 at 552:12–16).

Dr. Chowdhary, whom the Court found to be credible and reliable, conceded that King "sustained a cervical and lumbar sprain/strain as a result of this crash," and that this was because the accident worsened his preexisting degenerative back issues known as "congenital short pedicles." (*Id.* at 539:9–16, 540:19–25, 552:1–11).   That opinion is also consistent with the opinion of Dr. Lu, who testified that the amount of force involved in this accident would have caused muscle sprain.   (Doc. 55 at 477:21–478:2).   Dr. Chowdhary agreed that this kind of injury is commonly known as "aggravation" for long-term injuries and "exacerbation" for short term injuries.   (Doc. 56 at 544:17–22).   Dr. Chowdhary

---

[8] Although Dr. Chowdhary was offered by the defense, testimony elicited by Plaintiffs on cross-examination can support a finding that Plaintiffs have met their burden of persuasion—i.e., "the obligation to convince the fact-finder on the issue"—in this case. *Nichino Am., Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 185 n.9 (3d Cir. 2022) (quotation omitted).

reasoned that King was properly diagnosed with bilateral paraspinal muscle tenderness in his neck and lower back based on his CT exam scans after the accident, which essentially meant King had "whiplash-like symptoms" with spastic muscles in the neck and low back.  (*Id.* at 523:19–24).  Although King underwent surgery on his L4-5 disc that led to a permanent anatomical change, Dr. Chowdhary testified that the nature of King's injury should have been improved with non-surgical conservative care within six weeks.  (*Id.* at 538:11–14, 556:14–17).  Thus, in the absence of any other possible cause, the Court finds that, at a minimum, this accident caused King's injuries as described by Dr. Chowdhary.

### c. Damages

"To recover for his past medical bills, [Plaintiff] must establish by a preponderance of the evidence that the cost of his medical care was reasonable, and the care was necessarily or reasonably obtained."  *Eason*, 771 F. Supp. 3d at 1299.  "Treatment is necessarily or reasonably obtained if (1) 'the charges are for treatment [that] the plaintiff sought for injuries at issue in [the] lawsuit, as opposed to treatment for some other condition,' and (2) 'the charges are for a reasonable amount.'"  *Id.* (quoting *Dungan v. Ford*, 632 So. 2d 159, 163 (Fla. 1st DCA 1994)); *see also Columbia Hosp. (Palm Beaches) L.P. v. Hasson*, 33 So. 3d 148, 150 (Fla. 4th DCA 2010) ("The patient's obligation is not to pay whatever the provider demands, but only a reasonable amount." (quotation omitted)).  "Plaintiffs may satisfy their burden to prove the reasonableness and necessity of medical expenses 'through expert witness testimony, [their] own lay testimony, or a combination of both.'"  *Eason*, 771 F. Supp. 3d at 1299 (quoting *Roman v. Sos*, 393 So. 3d 1263, 1267 (Fla. 2d DCA 2024)).  Moreover, under Florida law, "[a]

plaintiff cannot recover non-economic damages from a motor vehicle accident unless the negligence caused a permanent injury." *Fittro v. United States*, 764 F. Supp. 3d 1171, 1179 (M.D. Fla. 2024).

Consistent with Dr. Chowdhary's assessment, this accident would have inflicted non-permanent injuries on King consistent with cervical and lumbar sprain and strains requiring treatment for a period of six weeks. *See Fittro*, 764 F. Supp. at 1179–80. Therefore, the proper damages award would cover the initial emergency room visit at Advent Health and the medical treatment King underwent at Kirkman Chiropractic during the six-week timeframe, between September 13, 2021, and October 15, 2021. (Doc. 51-1 at 77; Doc. 51-7 at 2–4). In total, King incurred $14,236 in charges from Advent Health for his initial emergency room visit and $6,617 in charges for treatment at Kirkman Chiropractic during the relevant six-week timeframe, totaling $20,853.00. (Doc. 51-1 at 77; Doc. 51-7 at 2–4). The Court finds that this is a proper award of damages in this case.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Clerk is directed to enter judgment in favor of Defendant, the United States, and against Plaintiff Terrance Brantley, providing that Terrance Brantley shall take nothing as to Count I of the Complaint.

2. The Clerk is further directed to enter judgment in favor of Plaintiff Marcellas King, and against Defendant, the United States, as to Count II of the Complaint in the sum $20,853.00.

3. Thereafter, the Clerk is directed to terminate any pending motions and close this case.

**DONE AND ORDERED** in Jacksonville, Florida on March 27, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE


Copies furnished to:

Counsel of Record